Allen Murray Myers, J.
The defendant, a pharmacist, is charged in an 11-count indictment, with one violation of section 220.30 of the Penal Law, a Class D felony and 10 violations of the Education Law, all misdemeanors.
This is an omnibus motion by defendant:
1. To inspect the Grand Jury minutes on the ground that:
a. The procedure for making- the sale of methaqualone a felony is an unconstitutional delegation of the legislative power ;
b. The delay between the crime charged and the date of the indictment violated defendant’s right to a prompt and speedy trial;
2. For a hearing to suppress telephone recordings made between defendant and others;
3. To controvert the search warrant;
4. For an order directing the District Attorney to turn over certain papers including transcripts of telephonic recording between defendant and others;
5. For an order directing the District Attorney to supply a bill of particulars.
The District Attorney has agreed to supply the defendant with transcripts of the recorded items and has supplied all the particulars requested except the names of the person or persons to whom the illegal sales of drugs were allegedly made. This decision will therefore deal with the remaining requests.
The first part of defendant’s motion, to inspect the Grand Jury minutes, is addressed to the fact that the first count of the indictment charges a felony, violation of section 220.30 of the Penal Law; which crime he claims was created as a result of the unconstitutional delegation of a legislative function to the State Commissioner of Health. In addition, the defendant claims that he cannot be held for a felony because he was unaware that the offense with which he was charged, which *185 to his knowledge had been a misdemeanor, had become a felony.
The particular statute that defendant challenges is former section 3372 of the Public Health Law which provided: “ The commissioner is hereby authorized and empowered to make any rules, regulations and determinations which in his judgment may be necessary or proper to supplement the provisions of this article to effectuate the purposes and intent thereof or to clarify its provisions so as to provide the procedure or details to secure effective and proper enforcement of its provisions.”
On February 8, 1973 the Commissioner issued an order adding methaqualone to the list of controlled drugs. That order became effective when filed with the Secretary of State on February 9, 1973 (10 NYCRR former 81.47 [c] [1]). Defendant is charged with the illegal sale of methaqualone on or about March 1, 1973. Prior to the listing of methaqualone as a controlled drug, its sale without a prescription was a misdemeanor violation of the Education Law. Defendant claims that the delegation to the Commissioner of the power to add drugs to the controlled drug list is an illegal delegation of the legislative power because it empowers the Commissioner to create new crimes. I note that as of April 1, 1973, the old article 33 of the Public Health Law was repealed and a new article 33 went into effect. However that has no bearing on the issues on this motion.
In order to determine the significance of former section 3372 of the Public Health Law it must be read in conjunction with the other statutes applicable to the crime charged in this case.
Defendant is charged with violation of section 220.30 of the Penal Law which provides: “A person is guilty of criminally selling a dangerous drug in the fourth degree when he knowingly and unlawfully sells a dangerous drug.” Subdivision 4 of section 220.00 of the Penal Law defined a dangerous drug as “ any narcotic drug, depressant or stimulant drug, or hallucinogenic drug.” Subdivision 1 of former section 3371 of the Public Health Law defined “ depressant or stimulant drug”, setting forth the qualities the Commissioner must find present before he could classify the drug pursuant to the authority vested in him by former section 3372 of the Public Health Law. He merely tests a substance for those qualities, a purely ministerial act.
Legislative enactments are presumed valid and the burden is upon the person attacking such validity to demonstrate it *186 beyond a reasonable doubt (Matter of Van Berkel v. Power, 16 N Y 2d 37; People v. Perez, 56 Misc 2d 424). Not only has defendant failed to meet this burden but the interrelation of the statutes is an example of the correct method of delegation of legislative functions..
Section 1 of article III of the Constitution of New York State provides that “ The legislative power of this State shall be vested in the Senate and Assembly.” While inherently legislative powers may not be delegated, 11 there is a large field in which the legislature * * * ‘ may certainly delegate to others powers which the legislature may rightfully exercise itself ’ ” (Matter of Village of Saratoga Springs v. Saratoga Gas, Elec. Light & Power Co., 191 N. Y. 123, 138). The Legislature may authorize a subordinate body to administer and execute its law “ provided á reasonably clear standard is formulated to govern the exercise of discretion by the subordinate body (Packer Coll. Inst. v. University of State of N. Y., 298 N. Y. 184).” (People V. Carmichael, 56 Misc 2d 388, 391). In delegating a legislative power, it is incumbent upon the Legislature to lay down “ ‘ an intelligible principle ’, specifying the standards or guides in as detailed a fashion as is reasonably practicable in the light qf the complexities of the particular area to be regulated.” (Matter of City of Utica v. Water Pollution Control Bd., 5 N Y 2d 164, 169). It is a peculiarly legislative power to define and declare crimes and public offenses but the Legislature may delegate the power to make reasonable rules and regulations to an administrator or administrative agency (People v. Grant, 242 App. Div. 310). The Legislature may not delegate the authority to create a crime and prescribe the penalties therefore (People v. Ryan, 267 N. Y. 133).
In this case the Legislature declared the crime and its punishment (Penal Law, § 220.30), defined the material elements of the crime (Penal Law, § 220.00), and then delegated the authority within strict guidelines and standards (Public Health Law, § 3371, subd. 1) to the Commissioner of Health to add or subtract from the list of controlled drugs (Public Health Law, § 3372). There is nothing vague or unconstitutional about section 3372 of the Public Health Law (see United States v. Cardiff, 344 U. S. 174 for discussion of vagueness). The remainder of the statutes discussed hereinabove also fit into the framework of the proper exercise of legislative function (see People v. Ricci, 59 Misc 2d 259).
*187 Defendant was not entitled to notice of the Commissioner’s addition of methaqualone to the controlled drug list making its sale without a prescription a felony. Subdivision 2 of section 15.20 of the Penal Law provides in pertinent part that: “A person is not relieved of criminal liability for conduct because he engages in such conduct under a mistaken belief that it does not, as a matter of law, constitute an offense ”. An offense is any conduct for which oxie may be sentenced to a term of imprisonmént or to a fine as provided by any law of the State, or by a rule or regulation of any governmental instrumentality lawfully authorized to adopt such rule or regulation (Penal Law, § 10.00, subd. 1). The sale of methaqualone without a prescription was a misdemeanor violation of the Education Law, prior to the order of the Commissioner and was therefore an offense. The mere fact of change in gravity of the offense does not constitute a defense of lack of knowledge or intention to commit the crime. (Penal Law, § 15.20; see, also, Richardson, Evidence [8th ed.], § 82.)
The second part of defendant’s motion to inspect the Grand Jury minutes is addressed to the fact that there was an unjustified delay between the time of the crimes charged in Counts Nos. 4 to 11 and the indictment and arrest of the defendant.
A mere delay in time between the commission of a crime and the indictment and arrest therefor is not a constitutional violation (People v. London, 36 A D 2d 980). The primary safeguard against an excessive delay is the Statute of Limitations (United States v. Feinberg, 383 F. 2d 60). However, where a delay impairs the capacity of the accused to prepare his defense the effect of the delay may acquire constitutional dimensions (Godfrey v. United States, 358 F. 2d 850; Ross v. United States, 349 F. 2d 210). Nevertheless, a mere allegation of prejudice by defense counsel does not compel a hearing on the prejudicial effect of the delay nor is it conclusive on the issue (People v. London, supra). It is incumbent upon the defendant to show prejudice (cf. People v. White, 2 N Y 2d 220, app. dsmd. 353 U. S. 969; People v. Abbatiello, 30 A D 2d 11) and the defendant has failed to do so in this case.
That part of defendant’s motion to suppress the telephonic conversation between the informant and one Stanley Einhorn and overheard by the police is denied. The overheard conversation is not an “ intercepted communication” within either of the definitions set forth in subdivision 3 of CPL 700.05 because the conversation was overheard with the consent of the sender of the communication. No eavesdropping warrant was. *188 necessary and the action of overhearing is not proscribed by statute. It is therefore irrelevant, for purposes of this motion, who the receiver of the conversation was. That is a question of admissibility for the Trial Judge.
Defendant moves to controvert the search warrant and suppress the evidence seized thereunder on the ground that the warrant is a general warrant and therefore improper and that in any event since the defendant was not given a receipt for the property seized, although he was later supplied with an inventory, the seized property should be suppressed.
The Fourth Amendment to the United States Constitution requires that a search warrant ‘ ‘ particularly ’ ’ describe the things to be seized. CPL 690.10 describes the property subject to seizure under a warrant as follows:
“ Personal property is subject to seizure pursuant to a search warrant if there is reasonable cause to believe that it:
“ 1. Is stolen; or
“2. Is unlawfully possessed; or
“ 3. Has been used, or is possessed for the purpose of being used, to commit or conceal the commission of an offense; or
“4. Constitutes evidence or tends to demonstrate that an offense was committed or that a particular person participated in the commission of an offense.”
The warrant herein authorized the immediate search of the defendant’s pharmacy “ for narcotic, depressant and stimulant, drugs, dangerous drugs, controlled drugs, invoices, prescription pills, freight and shipment records, narcotic stimulant, depressant, dangerous and controlled drug records and books, correspondence relating to the purchase and sale of narcotic, depressant, stimulant, dangerous and controlled drpgs, can-celled checks, journals, ledgers and other business records, such records relating to the purchase, sale and distribution of narcotic, depressant, stimulant, dangerous and controlled drugs; such records and items being concealed to prevent a crime or offense from being discovered and tending to show that particular persons committed a crime ”.
General warrants are violative of fundamental rights and forbidden by the Fourth Amendment (Marron v. United States, 275 U. S. 192). The requirement that the things to be seized be described with particularity is to prevent the seizure of one thing when the warrant describes another and to leave nothing to the discretion of the officer making the search (Stanford v. Texas, 379 U. S. 476, rehearing den. 380 U. S. 926). Classically, *189 this issue comes up in cases where obscene materials are sought and broad authority has been given in the warrant to seize such materials. Property thus seized has been consistently suppréssed because the warrant was too broad in scope (Marcus v. Search Warrant, 367 U. S. 717; People v. Bosco, 56 Misc 2d 1080).
The restriction is of course not limited to such cases. In Stanford v. Texas (supra, p. 478), the invalid warrant authorized a search of “ a place where books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings and other written instruments concerning the Communist Party of Texas ”.
And the Criminal Court of the City of New York invalidated a warrant directing the search and seizure of “written records and other paraphernalia and equipment, used or possessed unlawfully in connection with illegal bookmaking operations ” (People v. Chilli, 49 Misc 2d 540, 541).
The items sought with the instant search warrant are described with particularity. However, the particulars are so broad as to make them indistinguishable from a general warrant authorizing a search and seizure of everything in the drugstore with the possible exception of aspirin and toothpaste. There is nothing in the affidavit in support of the warrant to suggest that all the items sought were stolen (CPL 690.10, subd. 1), unlawfully possessed (CPL 690.10, subd. 2), dr that they were being used to commit or conceal commission of an offense (CPL 690.10, subd. 3) or constituted evidence of the commission of an offense (CPL 690.10, subd. 4). Were the warrant not so broad, a mere search for evidence, within appropriate guidelines, would be constitutionally permissible (Warden v. Hayden, 387 U. S. 294). Keeping in mind that the defendant was a druggist whose profession it was to prepare and dispense drugs, this warrant permitted nothing less than a fishing expedition and is therefore invalid. All the items seized pursuant thereto are suppressed.
I therefore" do not reach the issue of the effect of the failure of the police to give defendant a receipt for the items seized pursuant to the search warrant. However, the giving of a receipt as required by the Criminal Procedure Law is at the very least the better police practice and I commend, to the People, Judge Sobel’s dictum in People v. Montanaro (34 Misc 2d 624, 629), that while the statutory requirement is not of “constitutional dimension ”, “When dealing with fruits of a crime (particularly money) as distinguished from instru *190 mentalities or contraband, stricter compliance with these statutes would be required. Under certain circumstances failure to give a receipt or file or furnish inventory would make the seizure unlawful.”
As to defendant’s request for a bill of particulars, the People have agreed to turn over every item requested except Items Nos. 3, 8, 14, 20 and 26. All of these request the name of the person to whom the improper .sale of drugs took place.
The criteria for granting a bill of particulars are set forth in CPL 200.90 (subd. 3) as follows: “ If the court is satisfied that any or all of the items of information requested are necessary to enable the defendant adequately to prepare or conduct his defense, it must grant the motion as to every such necessary item and order the people to file and serve a bill of particulars accordingly. Nothing contained in this section, however, authorizes an order for a bill of particulars which requires the people to recite matters of evidence.”
A defendant is not entitled to a bill of particulars of the prosecutor’s theory of proof or of the evidence which he intends to use (People v. Spina, 14 A D 2d 505). He is entitled to such particulars regarding the nature and character of the crime as may be necessary for his defense (People v. Wagman, 31 Misc 2d 505).
The request for the names of the purchasers of the drugs allegedly illegally sold in this case presents a unique situation. Ordinarily, the names of the purchasers need not be revealed because such a revelation would in effect be the opening for perusal of the entire People’s case (People v. Wagman, supra). In People v. Rowlands (59 Misc 2d 501), the purchaser was named in the indictment and the court, in a very restrictive opinion, held that the defendant was entitled to particulars of other names by which the purchaser was known to the defendant only because the purchaser was already named in the indictment.
In this case, the defendant is a pharmacist who is entitled to dispense the very drugs which form the basis of the indictment and probably makes many such sales each day. The only restriction is that they must be sold by prescription. This is in sharp contrast to an illegal sale of drugs by a nonpharmacist. In that situation, the sales are far less frequent; there can be no defense of legality of the sale and the seller for the most part would remember his “ customers ” or the transactions. An obvious defense to the indictment is that the drugs were in fact sold by prescription, (Public Health Law. *191 former § 3381, subd. 1, par. [a]) and in order to track this down, the name of the purchaser is necessary for the proper defense of the action and in these circumstances the request does not constitute a mere search for evidence (CPL 200.90, subd. 3; cf. People v. Quarles, 44 Misc 2d 955).
Accordingly, the District Attorney is directed to provide the particulars on Items Nos. 3, 8, 14, 20 and 26.