## PEOPLE v TURMON

Docket No. 69776. Argued June 8, 1983 (Calendar No. 14).—Decided
        November 21, 1983.

    Edward R. Turmon pled guilty in the Recorder's Court of Detroit,
        George W. Crockett, III, J., of possession of pentazocine. The
        Court of Appeals, R. M. Maher, P.J., and Marutiak, J. (Beasley,
        J., dissenting), reversed on the grounds that the authorization
        of the Board of Pharmacy to classify controlled substances was
        an unconstitutional delegation of the power of the Legislature
        to create criminal offenses and that the defendant did not have
        notice that possession of pentazocine was a criminal offense
        (Docket No. 55893). The people appeal.

    In an opinion by Chief Justice Williams, joined by Justices
Levin, Ryan, Brickley, Cavanagh, and Boyle, the Supreme
Court *held:*

    Delegation by the Legislature to the Board of Pharmacy of
the authority to schedule controlled substances in accordance
with specific criteria is not unlawful. Sufficient standards and
safeguards are included in the controlled substances act to
satisfy the requirements of the doctrine of separation of powers
and due process. Promulgation and publication by the board of
the rule designating pentazocine as a controlled substance and
referring to the controlled substances act was not an abuse of
discretion and provided sufficient notice to the defendant that
his conduct was proscribed.

    1. The controlled substances act establishes schedules of
controlled substances which rank the substances according to
their potential for abuse and prescribes penalties for the unau-
thorized manufacture, distribution, possession, or use of the
substances on the basis of the nature of the conduct and the
classification and amount of the substances involved. The act

REFERENCES FOR POINTS IN HEADNOTES

[1-5] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 16, 17.
[2] 1 Am Jur 2d, Administrative Law § 150.
[3] 1 Am Jur 2d, Administrative Law § 14.
[4] 1 Am Jur 2d, Administrative Law §§ 117, 127.
[5] 2 Am Jur 2d, Administrative Law § 787.

grants the Board of Pharmacy the power to modify the schedules provided in the act and establishes a scientific advisory commission to assist the board in modifying the schedules. The provisions clearly provide a proper framework to guide the board's actions and ensure that the legislative policy to graduate in severity offenses pertaining to controlled substances according to the dangerousness of a drug and its potential for abuse will be given effect in the board's evaluation. The board functions within the guidelines as a factfinder, but the Legislature retains control of policy.

2. Delegation of legislative power to administrative agencies may be sanctioned where sufficient standards and safeguards are provided to circumscribe the agencies' use of power and ensure effectuation of legislative policy and provide a check of agency action. The standard of review does not differ where criminal sanctions obtain.

3. The Board of Pharmacy need not automatically incorporate federal substance classifications into the controlled substances act. The act gives the board broad discretion in reacting to action by the federal government. The board may mirror the action of the federal government or object to the action and provide a hearing for alternative disposition. In this case, failure of the board to adopt the federal classification of pentazocine was not an abuse of delegated authority.

4. The controlled substances act incorporates the notice procedures of the Administrative Procedures Act which requires that rules promulgated under the act be published in the administrative code. In this case, the rule classifying pentazocine as a controlled substance was published in the code a year before the defendant's arrest. It is not unreasonable to require persons to be familiar with the laws of the state by reference to compilations of the laws. Reference to the controlled substances act would lead the reader to conclude that the supplementation of the schedules of controlled substances by the board should be consulted. Because the action of the board in promulgating the classification of pentazocine is not a statutory enactment, it does not violate the requirement of the constitution that revised or amended sections of statutes must be re-enacted and published at length. The revision of the classification of substances to include pentazocine was clear and intelligible and provided sufficient notice that the defendant's conduct was proscribed.

Reversed.

Justice Kavanagh, dissenting, would hold that the controlled

substances act is unconstitutional and would not disturb the reversal of the defendant's conviction.

117 Mich App 345; 323 NW2d 698 (1982) reversed.

OPINION OF THE COURT

1. CRIMINAL LAW — ADMINISTRATIVE LAW — CONTROLLED SUBSTANCES.

Delegation by the Legislature to the Board of Pharmacy of the authority to schedule controlled substances in accordance with specific criteria is not unlawful; sufficient standards and safeguards are included in the controlled substances act to satisfy the requirements of the doctrine of separation of powers and due process (MCL 333.7201, 333.7211-333.7219; MSA 14.15[7201], 14.15[7211]-14.15[7219]).

2. CRIMINAL LAW — ADMINISTRATIVE LAW — CONTROLLED SUBSTANCES — PENTAZOCINE.

Promulgation and publication by the Board of Pharmacy of a rule designating pentazocine as a controlled substance and referring to applicable sections of the controlled substances act was not an· abuse of discretion and provided sufficient notice that possession of pentazocine was proscribed (MCL 333.7215; MSA 14.15[7215]; 1979 AC, R 338.3120[2][a]).

3. CRIMINAL LAW — ADMINISTRATIVE LAW — CONTROLLED SUBSTANCES.

The Board of Pharmacy need not incorporate federal controlled substance classifications into the controlled substances act; in exercising its broad discretion provided by the act, the board may mirror the action of the federal government or object to the action and provide a hearing for alternate disposition (MCL 333.7204; MSA 14.15[7204]).

4. CRIMINAL LAW — ADMINISTRATIVE LAW — ADMINISTRATIVE AGENCIES — CLASSIFICATION OF CRIMES.

The power to define crimes need not be exercised exclusively and completely by the Legislature; delegation of the power may be made to an administrative agency provided sufficient standards and safeguards are specified in the statute delegating the power.

5. CRIMINAL LAW — ADMINISTRATIVE LAW — CONTROLLED SUBSTANCES — PENTAZOCINE.

Sufficient notice that possession of pentazocine was proscribed criminal activity was provided where the rule classifying pentazocine as a controlled substance was published in the adminis-

trative code a year before a defendant's arrest and the controlled substances act clearly and intelligibly indicated that schedules of controlled substances in the code may be supplemented by rules promulgated by the Board of Pharmacy (MCL 333.7216; MSA 14.15[7216]; 1979 AC, R 338.3120[2][a]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, *Timothy A. Baughman,* Principal Attorney, Appeals, and *Janice M. Joyce Bartee,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Sheila N. Robertson)* for the defendant.

WILLIAMS, C.J. The issue in this case is whether MCL 333.7215; MSA 14.15(7215), which authorizes the Board of Pharmacy to classify controlled substances within legislatively established schedules, is an unlawful delegation of legislative power. Defendant directs a two-pronged attack on the delegation, claiming that the statute: (a) lacks sufficient standards to govern the exercise of the delegated power, and (b) represents an unconstitutional attempt by the Legislature to delegate its exclusive power to create crimes. Additional issues raised are whether the Board of Pharmacy abused its delegated authority and whether defendant was denied proper notice that his conduct was prohibited.

We hold that the Legislature's delegation of authority to add controlled substances to pre-existing schedules in accordance with specific criteria is not an unlawful delegation of power despite the fact that penal consequences flow from violation of the board's rules. The statute contains sufficient standards and safeguards to avoid infirmity under

both separation of powers and due process challenges. Additionally, the board did not abuse its discretion in the promulgation of the rule.

## I. FACTS

Under the controlled substances act, MCL 333.7101 *et seq.;* MSA 14.15(7101) *et seq.,* offenses and penalties dealing with regulated drugs are defined in part according to the dangerousness and abuse potential of the substance involved.[1] After initially classifying a number of substances onto one of five schedules, the Legislature delegated to the Board of Pharmacy the power to "add substances to, or delete or reschedule all substances enumerated in the schedules", MCL 333.7201; MSA 14.15(7201), and specifically authorized the board to supplement each schedule with new substances found to meet threshold criteria for that classification. MCL 333.7211; MSA 14.15(7211), MCL 333.7213; MSA 14.15(7213), MCL 333.7215; MSA 14.15(7215), MCL 333.7217; MSA 14.15(7217), MCL 333.7219; MSA 14.15(7219).

In 1979, the State Board of Pharmacy, pursuant to its authority under MCL 333.7215; MSA 14.15(7215), classified pentazocine (also known by its trade name, Talwin) as a schedule 3 controlled substance. This information, embodied as 1979 AC, R 338.3120(2)(a), was first published in the Michigan Administrative Code's Quarterly Supplement (No 99, p 92) issued August 14, 1979; it later appeared in the 1979 Michigan Administrative Code.[2]

---

[1] This act closely resembles the federal narcotic and dangerous drug law, 21 USC 801-904. The federal law in turn served as the pattern for the Uniform Controlled Substances Act which has been adopted with minor variations in 46 states as well as Puerto Rico, the Virgin Islands, and the District of Columbia. Uniform Controlled Substances Act, 9 ULA, p 78 (1983 Supp).

[2] 1979 AC, R 338.3120(2)(a) reads:

On August 20, 1980, defendant was charged with possession with intent to deliver 22 tablets of phenmetrazine and possession with intent to deliver 43 tablets of pentazocine. On September 18, 1980, he pled guilty to the reduced charge of possession of pentazocine. MCL 333.7403(2)(b); MSA 14.15(7403)(2)(b). Defendant was sentenced to two years probation.

On appeal as of right, defendant challenged the Legislature's delegation of authority to the Board of Pharmacy to schedule controlled substances and claimed that he was not given notice that possession of pentazocine was a criminal act. Finding both claims meritorious, the Court of Appeals reversed defendant's conviction. *People v Turmon*, 117 Mich App 345; 323 NW2d 698 (1982).[3]

On February 18, 1983, this Court granted the Wayne County Prosecutor leave to appeal. 417 Mich 888 (1983).

## II. Delegation to the Board of Pharmacy

### A. *Sufficiency of Standards*

Defendant challenges the controlled substances act as an unconstitutional delegation of authority

"(2) Unless specifically excepted or unless listed in another schedule, a material, compound, mixture, or preparation that contains any quantity of the following substances having a depressant effect on the central nervous system, including its salts, isomers (whether optical, position, or geometric), and the salts of such isomers, whenever the existence of such salts, isomers, and the salts of isomers is possible within the specific chemical designation, is included in schedule 3:

"(a) Chlorhexadol          Pentazocine
     Glutethimide          Sulfondiethylmethane
     Lysergic acid         Sulfonethylmethane
     Lysergic acid amide   Sulfonmethane".
     Methyprylon

[3] In holding the delegation provision unconstitutional, the *Turmon* panel expressly rejected the holding of an earlier panel, *People v Uriel*, 76 Mich App 102; 255 NW2d 788 (1977), approving constitutionality. Subsequently, two panels have rejected the holding in *Turmon.* See *People v O'Neal*, 122 Mich App 370; 333 NW2d 56 (1983); *People v Berry*, 123 Mich App 237; 333 NW2d 234 (1983).

in that the Legislature failed to provide sufficient safeguards to prevent an abuse of legislative power. Defendant asserts that the standards provided in the act are deficient for two reasons. First, the standards fail to avoid a separation of powers problem: the final scheduling decision, he argues, is a policy determination improperly left to the discretion of the administrative agency rather than the Legislature. Second, or perhaps as a corollary to the first allegation, defendant asserts that the unfettered scheduling discretion of the agency is devoid of due process protection. We disagree with both conclusions.

The criteria this Court has utilized in evaluating legislative standards are set forth in *Dep't of Natural Resources v Seaman,* 396 Mich 299, 309; 240 NW2d 206 (1976):

"While no hard and fast rule exists for determining whether a given statute has provided sufficient standards, a number of guiding principles have evolved in Michigan jurisprudence to assist in making a determination in this case.

"First, the act in question must be read as a whole; the provision in question should not be isolated but must be construed with reference to the entire act. *Argo Oil Corp v Atwood* [274 Mich 47, 53; 264 NW 285 (1935)].

"Second, the standard should be 'as reasonably precise as the subject matter requires or permits'. *Osius v St Clair Shores,* 344 Mich 693, 698; 75 NW2d 25; 58 ALR2d 1079 (1956).[7]

"The preciseness of the standard will vary with the complexity and/or the degree to which subject regulated will require constantly changing regulation. * * *

"Third, if possible the statute must be construed in such a way as to 'render it valid, not invalid', as conferring 'administrative, not legislative' power and as vesting 'discretionary, not arbitrary, authority'. *Argo Oil Corp v Atwood, supra,* 53."

Footnote 7 amplifies the second principle:

"A standard cannot be considered 'as reasonably precise as the subject matter requires or permits' if it does not satisfy due process requirements. See decision in *State Highway Comm v Vanderkloot*, 392 Mich 159, 169-178; 220 NW2d 416 (1974)."

B. *Application of Principles*

The first principle requires that the controlled substances act be read in its entirety to determine if the Legislature has provided sufficient guidelines to direct and constrain the agency's exercise of the delegated authority. Guidelines for the Board of Pharmacy are incorporated in appropriate sections of the statute.

The controlled substances act establishes a comprehensive catalog of offenses and penalties relating to controlled substances. MCL 333.7401-333.7408, 333.7410; MSA 14.15(7401)-14.15(7408), 14.15(7410). The act also establishes five schedules of controlled substances. These schedules, initially formulated by the Legislature, rank the substances according to potential for abuse. The Legislature prescribed penalties for the controlled substances offenses on the basis of a combination of three factors: the nature of the conduct and the classification and amount of the substance involved.

The act grants the "administrator", defined by MCL 333.7103; MSA 14.15(7103) as "the Michigan board of pharmacy or its designated or established authority", the power to modify the original schedules established by the Legislature. MCL 333.7201; MSA 14.15(7201). The eight-member board shall consist of six registered pharmacists licensed in the state for at least two years and two representatives of the general public. MCL 333.17721; MSA 14.15(17721), MCL 333.16135; MSA 14.15(16135)..

Before any substance is added to, deleted from, or reclassified among the schedules, the board must consider each of eight factors:

"(a) The actual or relative potential for abuse.

"(b) The scientific evidence of its pharmacological effect, if known.

"(c) The state of current scientific knowledge regarding the substance.

"(d) The history and current pattern of abuse.

"(e) The scope, duration, and significance of abuse.

"(f) The risk to the public health.

"(g) The potential of the substance to produce psychic or physiological dependence liability.

"(h) Whether the substance is an immediate precursor of a substance already controlled under this article." MCL 333.7202; MSA 14.15(7202).

In order to assist consideration of each factor, the statute also establishes a scientific advisory commission. MCL 333.7206; MSA 14.15(7206). The seven-member commission consists of two physicians, two pharmacists, the chief of the crime detection laboratory of the Department of Public Health, the director of mental health, and the director of state police. The board must receive this commission's recommendation, although it is not bound by its suggestions.

With regard to each schedule, the board may include a substance on a specific schedule only after the board finds it to possess certain characteristics. For example, a substance may be placed on schedule 3 only if the board finds all of the following:

"(a) The substance has a potential for abuse less than the substances listed in schedules 1 and 2.

"(b) The substance has currently accepted medical use in treatment in the United States.

"(c) Abuse of the substance may lead to moderate or low physical dependence or high psychological dependence." MCL 333.7215; MSA 14.15(7215).

These provisions clearly provide a proper framework to guide and direct agency action. The legislative policy expressed in the statute is apparent: controlled substance offenses are to be graduated in severity according to the dangerousness of the drug involved and its potential for abuse. Classification of the substances is placed in an agency with the technical expertise to make the necessary factual evaluation, and access to relevant information is provided. Numerous guidelines direct the board's evaluation. These provisions insure that the legislative policy expressed in the act will be given effect and substance through the agency's factual evaluation.

Given the Legislature's clearly articulated policy, we must reject the defendant's argument that the statutory provisions "leave the final scheduling conclusion to a policy determination" by the Board of Pharmacy. In this statutory scheme, the agency makes factual findings regarding abuse potential and potency of drugs, compares these factual findings to the scheduling criteria established by the Legislature, and thereby locates the appropriate classification of the substance. Thus, the Board of Pharmacy functions as a factfinder; the Legislature retains the policy-making control.

Addressing the second principle, the defendant concedes that "[t]he standards, in and of themselves, appear as reasonably precise as the subject matter of the legislation requires or permits". We agree. Our previous examination of the statute revealed that the Legislature provided clear, detailed standards to guide agency action and to facilitate judicial review. Further, we note that the

rapid rate at which new drugs are developed and introduced and the incredible ingenuity exhibited in the discovery of novel methods to abuse drugs necessitates a measure of flexibility in the area of drug regulation. See *State v Kellogg,* 98 Idaho 541, 543-544; 568 P2d 514 (1977); *State v Sargent,* 252 Or 579; 449 P2d 845 (1969).

Additionally, inclusion of the Administrative Procedures Act provisions as mandatory procedures to be followed in the board's rulemaking further insures against possible abuse of delegated power by the Board of Pharmacy. MCL 333.7201; MSA 14.15(7201).

Therefore, consonant with the third principle of preferring a valid to an invalid result, we conclude that the delegation of authority to the Board of Pharmacy is valid and constitutes neither an unconstitutional delegation of authority nor allows the board to act in an arbitrary or discriminatory manner.[4]

---

[4] This is clearly the majority position among the 25 states which have addressed the delegation issue of similar controlled substances acts. Nineteen states have found the act constitutional; 16 of these decisions were rendered by the states' highest appellate courts. *Ex parte McCurley,* 390 So 2d 25 (Ala, 1980); *Curry v State,* 279 Ark 153; 649 SW2d 833 (1983); *Cilento v State,* 377 So 2d 663 (Fla, 1979); *Ward v State,* 248 Ga 60; 281 SE2d 503 (1981); *State v Kellogg,* 98 Idaho 541; 568 P2d 514 (1977); *People v Avery,* 67 Ill 2d 182; 367 NE2d 79 (1977); *Hohnke v Commonwealth,* 451 SW2d 162 (Ky, 1970); *State v Boyajian,* 344 A2d 410 (Me, 1975); *State v King,* 257 NW2d 693 (Minn, 1977); *State v Thompson,* 627 SW2d 298 (Mo, 1982); *Montoya v O'Toole,* 94 NM 303; 610 P2d 190 (1980); *People v Einhorn,* 75 Misc 2d 183; 346 NYS2d 986 (1973); *State v Lisk,* 21 NC App 474; 204 SE2d 868 (1974); *State v Brown,* 576 P2d 776 (Okla Crim App, 1978); *State v Sargent,* 252 Or 579; 449 P2d 845 (1969); *State v Peloquin,* — RI —; 427 A2d 1327 (1981); *State v Edwards,* 572 SW2d 917 (Tenn, 1978); *Threlkeld v State,* 558 SW2d 472 (Tex Crim App, 1977); *State ex rel Scott v Conaty,* 155 W Va 718; 187 SE2d 119 (1972), *overruled in part* by *State v Grinstead,* 157 W Va 1001; 206 SE2d 912 (1974).

We note that six states' highest appellate courts have found the act unconstitutional. *State v Rodriguez,* 379 So 2d 1084 (La, 1980), *Howell v State,* 300 So 2d 774 (Miss, 1974), *State v Krego,* 70 Ohio Misc 14; 433 NE2d 1298 (1981), *State v Johnson,* 84 SD 556; 173 NW2d 894 (1970), *State v Gallion,* 572 P2d 683 (Utah, 1977), and *In re Powell,* 92 Wash 2d 882; 602 P2d 711 (1979).

## C. Delegation of the Power to Create Criminal Offenses

Defendant also argues that regardless how stringent the standards set by the Legislature, this delegation of power must fail. According to defendant, the creation of crimes, and more specifically of felony offenses, is an inherently legislative task which may not be delegated.

As a threshold matter, we recognize that some legislative powers are simply not delegable. Though not specifically mandated by any constitutional provision, this prohibition arises from the basic structure of the government. Certain powers of the legislative branch require exercise by the Senate or the House of Representatives, or both, in order for their purposes to be served. For example, Const 1963, art 11, § 7 grants to the House of Representatives the power to impeach civil officers and to prosecute the impeachment. For the House to assign this impeachment power to a commission or agency would violate the spirit and the principle of art 11, § 7. Here, the nature of the function within the constitutional framework of the government precludes delegation.

However, the complexities of modern government necessitate that today many facets of traditionally "legislative" power be exercised by administrative agencies. Provided that sufficient standards and safeguards, as discussed above, are provided to circumscribe the agencies' use of legislative power, thereby insuring effectuation of legislatively declared policies and a means to "check"

However, the statutes under review in two of the cases *(Rodriguez, supra,* and *Johnson, supra)* included provisions for automatic inclusion of any federally scheduled drug. See also *State v Grinstead, supra.* This provision, which is not included in the Michigan statute, served as the basis for the court's ruling.

The federal courts have displayed even more vigor in upholding the similar federal statute. See 47 ALR Fed 869.

agency action, such delegation of legislative power has been sanctioned repeatedly by this and other courts. See 1 Davis, Administrative Law, § 2.10, p 113, and § 2.04, p 30 (1976 Supp).

Defendant correctly notes, and we agree, that the creation of crimes is an inherently legislative task. See *United States v Wiltberger,* 18 US (5 Wheat) 76, 95; 5 L Ed 37 (1820); 21 Am Jur 2d, Criminal Law, § 11, p 124; 1 Wharton, Criminal Law (C. Torcia ed), § 10, pp 31-32. As stated in *People v Hanrahan,* 75 Mich 611, 619; 42 NW 1124 (1889):

"To declare what shall constitute a crime, and how it shall be punished, is an exercise of the sovereign power of a state, and is inherent in the legislative department of the government."

However, the standard of review of legislative delegation does not differ when the statute involves criminal sanctions. The Legislature is not precluded from including penal sanctions in a statute which declares a legislative policy, articulates guidelines to effectuate the policy, and authorizes an executive agency to implement its purpose.

Review of this Court's cases which scrutinized the Legislature's delegation of power to create crimes reveals that such delegation has been permitted if sufficient safeguards protect the public from arbitrary and capricious abuses of delegated discretion.[5]

---

[5] We note that *People v Hanrahan, supra,* cited by both parties, is not dispositive of the issue at hand. In *Hanrahan,* this Court upheld a municipal ordinance which criminalized keeping houses of prostitution. The city's legislatively granted charter specifically designated this power to the common council, a duly elected legislative body. The Court found that Const 1850, art 4, § 38 authorized the Legislature to delegate legislative power regarding local concerns to townships, cities, and villages.

In *Senate of the Happy Homes Club of America
v Alpena Board of Supervisors,* 99 Mich 117; 57
NW 1101 (1894), the Court held unconstitutional a
legislative scheme whereby persons arrested for
drunkenness would be acquitted upon completion
of a private alcohol rehabilitation program. Since
each private program could enforce its own rules—
as stringent or as lenient as it chose—and compli-
ance with these varying rules automatically re-
sulted in acquittal, the Court found that the Legis-
lature had delegated to private corporations the
power to acquit criminals, and thus to enact crimi-
nal law. This complete abdication of the legislative
role and failure to insure any degree of accounta-
bility in the creation of crimes was held unconsti-
tutional.

On the other hand, statutory arrangements in
which the Legislature provides regulatory guide-
lines for a subject area and prescribes penalties for
violations of rules to be promulgated by an agency
placed in charge of the regulatory activity have
been approved by the Court. Thus, in *People v
Soule,* 238 Mich 130; 213 NW 195 (1927), the Court
reviewed an act which gave the commission of
conservation the power to declare open season for
birds, fish, and fur-bearing animals. The Legisla-
ture had declared that the commission was to
regulate the wildlife of the state. Procedures were
set forth to promulgate the rules, and penalties
(including incarceration) were established for vio-
lation of properly promulgated rules. The Court
found that this delegation of rulemaking power
with attached criminal penalties included suffi-
cient safeguards to avoid a separation of powers
challenge. Pragmatically, the Court recognized

---

In contrast, the present case addresses the Legislature's delegation
of power to an executive agency.

that management of the state's natural resources required consideration of voluminous data; practical necessity dictated that evaluation of these facts should be left to an executive agency with considerable expertise. This Court concluded: "Where the statute provides a punishment for violating the regulations or orders of a commission, the power to create a crime is not delegated to the commission." *Id.,* 139. Therefore, the fact that the agency's rulemaking could have direct penal consequences did not invalidate the delegation of authority. See also *Westervelt v Natural Resources Comm,* 402 Mich 412; 263 NW2d 564 (1978); *Dep't of Natural Resources v Seaman, supra.*

These cases indicate that the power to define crimes, unlike some legislative powers, need not be exercised exclusively and completely by the Legislature. Provided sufficient standards and safeguards are included in the statutory scheme, delegation to an executive agency is appropriate, and often necessary, for the effectuation of legislative powers.

Clearly, the controlled substances act is premised on a legislative design similar to that employed in *Soule.* The Legislature formulated a comprehensive group of crimes dealing with controlled substances. An index of drugs adjudged dangerous or harmful was compiled, and the drugs were graduated according to potential for abuse. Penalties, including fines and incarceration, were coordinated to reflect the gravity of the offense and the seriousnesss of the controlled substance involved. Finally, the Board of Pharmacy, an eight-member board consisting of six pharmacists and two public members, was given the strictly controlled authority to modify the controlled substances schedule to insure that it reflect current developments in the drug industry.

Defendant correctly notes, however, that while the regulatory scheme approved in *Westervelt, Soule,* and *Seaman, supra,* included only misdemeanor-level crimes, the controlled substances act creates felonies. While it is true that more serious consequences flow from a felony conviction under the controlled substances act, we find no meaningful distinction between the delegation of power to make rules regarding misdemeanor offenses and the delegation of rulemaking relative to felony offenses. The severity of the penalty does not destroy the accountability of the Legislature nor the safeguards provided to protect the public. Therefore, the Legislature has not unconstitutionally delegated a nondelegable power.

### III. FAILURE TO COMPLY WITH STATUTE

Although defendant raises various challenges to the Legislature's delegation to the Board of Pharmacy, the main focus of the defendant's challenge is upon the statutory scheme itself, not upon the recipient agency's exercise of that power. Nonetheless, defendant does briefly argue that the board abused its delegated authority by failing to adopt the federal classification.

The federal government scheduled pentazocine as a schedule IV drug on February 19, 1979.[6] 21 CFR 1308.14(f). The Board of Pharmacy promul-

---

[6] Both the federal and Michigan acts include the same scheduling criteria for the five schedules. For example, 21 USC 812(b)(3) states that the required findings for a schedule III substance are:

"(A) The drug or other substance has a potential for abuse less than the drugs or other substances in schedules I and II.

"(B) The drug or other substance has a currently accepted medical use in treatment in the United States.

"(C) Abuse of the drug or other substance may lead to moderate or low physical dependence or high psychological dependence." MCL 333.7215; MSA 14.15(7215) lists the same criteria.

gated 1979 AC, R 338.3120, designating pentazocine as a schedule 3 drug on April 25, 1979. Defendant argues that § 7204 of the controlled substances act directs the board to "similarly control" a substance once it receives notice of the federal agency's action. According to defendant, the board's failure to schedule pentazocine as a schedule 4 drug is an unlawful act.

However, this argument misperceives the authority delegated in this statute. Section 7204 in its entirety reads:

"If a substance is designated, rescheduled, or deleted as a controlled substance under federal law and notice thereof is given to the administrator, the administrator shall similarly control the substance under this article after the expiration of 30 days following publication in the federal register of a final order designating a substance as a controlled substance or rescheduling or deleting a substance, *unless within that 30-day period, the administrator objects to inclusion, rescheduling, or deletion.* In that case, the administrator shall publish the reasons for objection and afford all interested parties an opportunity to be heard. At the conclusion of the hearing, the administrator shall publish a decision, which shall be final unless altered by statute. Upon publication of the objection to inclusion, rescheduling, or deletion under this article by the administrator, control under this article is stayed until the administrator publishes the decision." (Emphasis added.) MCL 333.7204; MSA 14.15(7204).

Thus, this statute vests the board with discretion —once the federal government schedules a drug and brings it to the state board's attention, the state agency must take some action regarding the drug. The board may either mirror the federal scheduling or object to that action and provide a hearing for an alternate disposition. Therefore, the Board of Pharmacy is not directed to automati-

cally incorporate the federal action into the Michigan controlled substances act.

In fact, three state supreme courts have ruled that provisions requiring automatic incorporation of federal substance classifications represent an unconstitutional delegation of state legislative authority to a federal agency. See *State v Rodriguez,* 379 So 2d 1084 (La, 1980); *State v Johnson,* 84 SD 556; 173 NW2d 894 (1970); *State v Grinstead,* 157 W Va 1001; 206 SE2d 912 (1974).

We find therefore that § 7204 does not require the board to adopt the federal agency's decision to classify pentazocine as a schedule 4 substance.

## IV. SUFFICIENCY OF NOTICE

Finally, defendant argues that his Fourteenth Amendment rights to due process protection have been violated regarding the notice aspects of this act. Defendant expands on two areas: first, he argues that the state's "system [of] post-act administrative amendments" to the controlled substances act deprived him of fair notice that possession of pentazocine was a criminal offense. Second, defendant asserts that the board's failure to comply with the requirement of Const 1963, art 4, § 25 that amended statutes be re-enacted and published at length represents an independent violation of the constitution which also deprived him of notice of the statute. We are unpersuaded by either of these arguments.

### A. *Notice*

Unquestionably, due process requires that defendant be apprised of conduct which a criminal statute prohibits. The parameters of notice requirements of criminal statutes are often explored in the context of challenges for vagueness. In one

such challenge, this Court quoted with approval *United States v Harriss,* 347 US 612, 617; 74 S Ct 808; 98 L Ed 989 (1954):

" 'The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.' "

*People v Dempster,* 396 Mich 700, 714-715; 242 NW2d 381 (1976). See also *People v Abate,* 105 Mich App 274, 282; 306 NW2d 476 (1981).

Of course, vagueness challenges are usually directed at the notice provided by the actual language of the statute. In the present case, defendant argues that the notice deficiency arises from the form of publication of the agency's rule. In either situation the underlying concern is the same: "No man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed".

The controlled substances act contains various provisions regarding notice. First, the act incorporates the procedures set forth in the Administrative Procedures Act. MCL 333.7201; MSA 14.15(7201). That act requires that all rules promulgated by an agency shall be filed with the Secretary of State, MCL 24.246(1); MSA 3.560(146)(1), and that the Secretary of State, "as often as he deems it advisable", shall publish the rules in a supplement to the Michigan Administrative Code. MCL 24.246(3); MSA 3.560(146)(3).

Second, the act directs:

"The administrator shall notify all registrants under
this article, the secretary of the senate, the clerk of the
house of representatives, the attorney general, and the
director of the department of state police of any change
in scheduling or rescheduling not later than 30 days
before the change is effective." MCL 333.7231; MSA
14.15(7231).

Pursuant to these provisions, 1979 AC, R
338.3120, which classified pentazocine as a sched-
ule 3 substance, was published in the Michigan
Administrative Code's Quarterly Supplement, No.
99, p 92. The supplement was issued on August 14,
1979.

We must therefore inquire whether these statu-
tory provisions as applied to these facts provided
"a person of ordinary intelligence fair notice that
his contemplated conduct is forbidden by the stat-
ute".

Initially we note the time honored maxim that
ignorance of the law is no excuse. 4 Blackstone,
Commentaries, p 27. However, it would be unrea-
sonable to presume this knowledge if access to the
statute is unavailable.

In the present case, the rule in question was
published in a supplement to the Michigan Admin-
istrative Code fully a year before defendant was
arrested for possession of the drug. We do not find
it unreasonable to expect the people of this state
to acquire familiarity with its laws through refer-
ence to a compilation published by the state. Ref-
erence to the controlled substances act would lead
the reader to conclude that the schedules are
continually being modified by the Board of Phar-
macy and that the agency's supplementation
should be sought elsewhere. Accord, *Montoya v
O'Toole,* 94 NM 303, 305; 610 P2d 190 (1980).

Therefore, we find the notice provisions sufficient to satisfy due process requirements.[7]

## B. *Re-Enact—Publish Clause*

Finally, defendant contends that he was denied notice that his conduct was prohibited by the Legislature's failure to republish or re-enact MCL 333.7216; MSA 14.15(7216) after amendment by the Board of Pharmacy. Defendant relies on Const 1963, art 4, § 25 which provides:

"No law shall be revised, altered or amended by reference to its title only. The section or sections of the act altered or amended shall be re-enacted and published at length."

This Court examined the plain meaning and purpose of article 4, § 25 at length in *Advisory Opinion re Constitutionality of 1972 PA 294*, 389 Mich 441; 208 NW2d 469 (1973). The Court concluded:

"The language of § 25 is quite clear. It says succinctly and straightforwardly that no law *(meaning statutory enactment)* shall be revised, altered or amended by reference to its title only. * * *

"There are only two sentences in § 25. Although the second word is 'law', it is obvious from the reading of the entire section that 'law' means act or section of an act." (Emphasis added.) *Id.,* p 470.

---

[7] While not the "focal point" or "thrust" of his due process argument, defendant also objects to the fact that this criminal offense is located in the public health section of the compiled laws rather than the criminal code and that the substances are not listed by their "commercial or generic" names.

However, it is not unreasonable to expect the public to utilize the index to the statutes to locate the controlled substances act. Nor do we take objection to the omission of trade names in the statute; this information is available by reference to the *Physician's Desk Reference* or a call to a local pharmacist.

Clearly, the action of the Board of Pharmacy may not be labeled a "statutory enactment"; it is a statutorily authorized agency promulgated rule. As such, 1979 AC, R 338.3120 falls outside the ambit of art 4, § 25.

Additionally, we note that the underlying problem which prompted the inclusion of art 4, § 25 in the constitution has been avoided with the rule's promulgation. *Advisory Opinion* explained the purpose of art 4, § 25:

"Section 25 is worded to prevent the revising, altering or amending of an act by merely referring to the title of the act and printing the amendatory language then under consideration. If such a revision, alteration or amendment were allowed, the public and the Legislature would not be given notice and would not be able to observe readily the extent and effect of such revision, alteration or amendment." 389 Mich 470.

When published in the administrative code, pentazocine was not presented in isolation with a bare reference to the controlled substances act. Rather, the code supplement set forth the entire list of schedule 3 substances, with pentazocine included. Thus, notice of "the extent and effect of such revision, alteration or amendment" was presented clearly and intelligibly.

## V. CONCLUSION

Therefore, having reviewed the challenged sections of the controlled substances act and the act in its entirety, we hold that the Legislature's delegation to the Board of Pharmacy of the authority to schedule controlled substances in accordance with detailed criteria is not an unlawful delegation of power. Sufficient standards and safe-

guards are included in the statute to satisfy the requirements of both the separation of powers doctrine and due process.

Additionally, publication of the rule in the administrative code provided sufficient notice that defendant's conduct was proscribed. Also, the board's promulgation of rules does not fall within the strictures of Const 1963, art 4, § 25.

Finally, the Board of Pharmacy did not abuse its discretion in classifying pentazocine as a schedule 3 substance.

The decision of the Court of Appeals is therefore reversed.

LEVIN, RYAN, BRICKLEY, CAVANAGH, and BOYLE, JJ., concurred with WILLIAMS, C.J.

KAVANAGH, J. *(dissenting)*. The constitutional infirmity of the controlled substances act, MCL 333.7101 *et seq.;* MSA 14.15(7101) *et seq.,* and the federal act on which it was patterned, 21 USC 801-904, is that to which I spoke in *People v Sinclair,* 387 Mich 91; 194 NW2d 878 (1972), and *People v Lorentzen,* 387 Mich 167; 194 NW2d 827 (1972).

I would not disturb the decision of the Court of Appeals reversing defendant's conviction.