KLAMMER v DEPARTMENT OF TRANSPORTATION

Docket No. 71667. Submitted April 18, 1984, at Lansing.—Decided March 4, 1985. Leave to appeal applied for.

Plaintiff, George F. Klammer, had been employed by the Michigan Department of Transportation for 26 years before his forced retirement in June of 1979 when he turned 70 years old. Following his retirement, plaintiff applied to the retirement board for a continuation of his employment. This was denied. Plaintiff then filed a grievance with the Civil Service Commission charging the Department of Transportation and the retirement board with age discrimination. This grievance was dismissed for lack of jurisdiciton. Plaintiff then filed a complaint with the Michigan Civil Rights Commission alleging age discrimination. The commission dismissed the claim. Plaintiff then brought an action in the Ingham Circuit Court alleging age discrimination in violation of the Elliott-Larsen Civil Rights Act. Named as defendants were the Department of Transportation, Department of Civil Service and the State Employees' Retirement Board. Both sides moved for a summary judgment. The trial court, Robert Holmes Bell, J., granted the defendants' motion based on a failure to state a claim upon which relief can be granted. Plaintiff appeals from that order. *Held:*

1. The passage of the Elliott-Larsen Civil Rights Act did not impliedly repeal the mandatory retirement provision of the State Employees' Retirement Act. The Elliott-Larsen Civil Rights Act clearly excepts retirement polcies and systems

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 73 Am Jur 2d, Statutes §§ 393, 395.

[1, 3] 15 Am Jur 2d, Civil Rights §§ 229, 233.

[1, 3, 4] 63A Am Jur 2d, Public Officers and Employees §§ 181, 182.

Mandatory retirement of public officer or employees based on age. 81 ALR3d 811.

Validity and construction of labor legislation prohibiting discrimination on account of age. 29 ALR3d 1407.

[2] 73 Am Jur 2d, Statutes § 254.

[4, 5] 2 Am Jur 2d, Administrative Law §§ 191, 192.

16 Am Jur 2d, Constitutional Law §§ 335, 337.

[5] 16 Am Jur 2d, Constitutional Law § 214.

73 Am Jur 2d, Statutes §§ 103, 250.

which apply uniformly and contain provisions for pension or other economic systems to protect the worker economically on retirement. The Elliott-Larsen Civil Rights Act draws no distinction between private and public employers as to these retirement provisions, therefore, these provisions do apply to the state and its retirement program. Had the Legislature desired to terminate all involuntary retirement, it would have expressed that thought precisely.

2. The retirement board did not act arbitrarily and decided plaintiff's petition in accordance with long-standing and well-known rules. In the context of this case, the term "necessary" was a sufficiently precise standard to prevent an unlawful delegation of legislative authority where the retirement board is authorized to retain employees past the age of 70 for such period as the board determines to be "necessary". The term "necessary" refers to the period of time that the board may extend the employment and not the services.

3. Plaintiff's situation did not fit any of the criteria historically applied by the retirement board in determining a grant of an extension.

Affirmed.

1. CIVIL RIGHTS — STATE EMPLOYEES' RETIREMENT ACT — MANDATORY RETIREMENT — AGE DISCRIMINATION.

The Legislature did not repeal by implication the provision of the State Empoyees' Retirement Act providing for mandatory retirement at age 70 when the Legislature enacted the Elliott-Larsen Civil Rights Act provision dealing with age discrimination in employment; the language of the civil rights act clearly excepts retirement policies and systems which apply uniformly and contain provisions for pension or other economic systems to protect the worker economically on retirement (MCL 37.2202, 38.19[3]; MSA 3.548[202], 3.981[19][3]).

2. STATUTES — REPEAL OF STATUTES — JUDICIAL CONSTRUCTION.

New legislation passed by the Legislature is not presumed to impliedly repeal an older statute which apparently conflicts with it unless the Legislature's intent to repeal is expressed in particularly clear terms; if a court can point to any other reasonable construction than the implied repeal of the older statute, it should attempt to harmonize the two.

3. CIVIL RIGHTS — AGE DISCRIMINATION — STATE EMPLOYEES' RETIREMENT ACT.

The provision in the Elliott-Larsen Civil Rights Act which excepts from its prohibition of age discrimination in employment a

retirement policy or system which applies uniformly and contains provisions for pension or other economic systems to protect the worker economically on retirement applies to the State of Michigan and its employees' retirement program (MCL 37.2202, 38.1 *et seq.;* MSA 3.548[202], 3.981[1] *et seq.).*

4. CONSTITUTIONAL LAW — DELEGATION OF AUTHORITY — STATE EMPLOYEES' RETIREMENT ACT.

The State Employees' Retirement Act does not unconstitutionally delegate legislative authority to the retirement board where the board is authorized to retain employees past the age of 70 for such period as the board determines to be necessary; in that context, the word "necessary" refers to the period of time that the board may extend the employment and not the services (MCL 38.19[3]; MSA 3.981[19][3]).

5. ADMINISTRATIVE LAW — DELEGATION OF AUTHORITY — STATUTES.

The guiding principles in determining whether a statute provides sufficient standards for the exercise of discretion of an administrative official so as to avoid an unconstitutional delegation of legislative authority are: (1) the provision in question should not be isolated but must be construed with reference to the entire act, (2) the standard should be as reasonably precise as the subject matter requires or permits, and (3) if possible the statute must be construed in such a way as to render it valid, not invalid, as conferring administrative, not legislative, power, and as vesting discretionary, not arbitrary, authority; a standard cannot be considered as reasonably precise as the subject matter requires or permits if it does not satisfy due process requirements.

*Hiller, Larky & Hoekenga* (by *Marc M. Susselman),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Michael A. Lockman* and *Susan A. Harris,* Assistants Attorney General, for defendants.

Before: D. E. HOLBROOK, JR., P.J., and CYNAR and T. GILLESPIE,* JJ.

T. GILLESPIE, J. Plaintiff appeals as of right from

---

* Circuit judge, sitting on the Court of Appeals by assignment.

a grant of summary judgment in favor of defendants. Plaintiff was forced to retire at age 70 as required by the State Employees' Retirement Act, MCL 38.19(3); MSA 3.981(19)(3). He subsequently filed suit claiming that his forced retirement violated the Elliott-Larsen Civil Rights Act. MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.* The trial court ruled that his claim was barred by the mandatory retirement provision cited above. We affirm.

The facts are undisputed. Plaintiff-appellant, George F. Klammer, had been employed by the Michigan Department of Transportation for 26 years before his forced retirement in June of 1979 when he turned 70 years old. Plaintiff had worked as an engineering aide and the MDOT acknowledged that he was industrious, alert, capable and a completely dedicated employee.

Following plaintiff's retirement, he applied to the retirement board for a continuation of his employment. This was denied. He then filed a grievance with the Civil Service Commission charging the MDOT and the retirement board with age discrimination. This grievance was dismissed for lack of jurisdiction. Plaintiff then filed a complaint with the Michigan Civil Rights Commission alleging the same claim and it, too, was dismissed. Mr. Klammer then filed the instant action in June, 1981, in the Circuit Court for Ingham County, alleging age discrimination in violation of the Elliott-Larsen Civil Rights Act, MCL 37.2801; MSA 3.548(801). Both sides filed motions for summary judgment and defendants' motion was granted for failure to state a claim for which relief can be granted. GCR 1963, 117.2(1).

The plaintiff in this case is admittedly industrious, alert and entirely competent. The reason for

his termination is solely that he has passed the chronological age of 70 years.

The Michigan mandatory retirement provision is found in MCL 38.19(3); MSA 3.981(19)(3), and provides:

"(3) On and after January 1, 1957, any member who has attained or attains age 70 years shall be separated from state service on the first day of the calendar month next succeeding the month in which the member shall have attained the age of 70 years. However, upon application of a member who has attained age 70 years, the retirement board may continue such member in service for such periods as the retirement board may determine to be necessary."

The act was passed in 1943. At the time of passage, the act provided for elective retirement at the age of 60 and mandatory retirement at the age of 70. In 1974 the act was amended by the addition of subsection 3, partially quoted above, which continued the mandated retirement at age 70 unless the retirement board specially finds that for a certain period his or her service is "necessary".

The relevant Elliott-Larsen Civil Rights Act provision dealing with employment is found at MCL 37.2202; MSA 3.548(202), and reads as follows:

"(1) An employer shall not:

"(a) Fail or refuse to hire, or recruit, or discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

"(b) Limit, segregate, or classify an employee or applicant for employment in a way which deprives or tends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of religion, race,

color, national origin, age, sex, height, weight, or marital status.

"(c) Segregate, classify, or otherwise discriminate against a person on the basis of sex with respect to a term, condition, or privilege of employment, including a benefit plan or system.

"(2) This section shall not be construed to prohibit the establishment or implementaion of a bona fide retirement policy or system which is not a subterfuge to evade the purpose of this section.

"(3) This section shall not apply to the employment of an individual by his or her parent, spouse, or child."

Section 103 of Elliott-Larsen defines age as chronological age.

The issue, of course, is whether the passage of Elliott-Larsen in 1977 impliedly repealed the compulsory retirement provision of MCL 38.19(3); MSA 3.981(19)(3).

It is plaintiff's contention that Elliott-Larsen impliedly repeals the Michigan mandatory retirement provision of MCL 38.19(3); MSA 3.981(19)(3). He further contends that the declaration by the Legislature in subsection 2 of the employment provision of Elliott-Larsen, MCL 37.2202; MSA 3.548(202), should not be construed to provide an exemption for such mandatory retirement provisions. The Elliott-Larsen section reads as follows: "This section shall not be construed to prohibit the establishment or implementation of a bona fide retirement policy or system which is not a subterfuge to evade the purpose of this section."

In forwarding this contention the plaintiff faces the hurdle of overcoming the presumption that new legislation passed by the Legislature is not presumed to impliedly repeal an older statute which apparently conflicts with it, unless the Legislature's intent to repeal is expressed in particularly clear terms. It has long been held that, if the

court can point to any other reasonable construction than the implied repeal of an older statute, it should attempt to harmonize the two. *Ficano v Lucas,* 133 Mich App 268, 281; 351 NW2d 198 (1983).

Elliott-Larsen was conceived to deter discrimination against older workers who are still capable. Generally, retirement under a plan which is not a subterfuge, is applied uniformly and is funded, is not considered discrimination and is socially beneficial. The reasons are several.

First, the employee usually knows and accepts as a condition of employment that he will retire under the plan. The knowledge of certainty of retirement leads to earlier and more considered planning for retirement. Employees knowing the certainty and date of their retirement tend to start delegating and training their replacements, thereby making for smoother transition.

The trauma of retirement at a specified age is less severe than it becomes at a later time when the employee must be terminated because he or she can no longer perform his or her duties.

We must assume that the Legislature sought to protect all those who exceed a chronological age (now 70) from the hardship of giving up their employment. The language of Elliott-Larsen, however, clearly excepts retirement policies and systems which apply uniformly and contain provisions for pension or other economic systems to protect the worker economically on retirement.

It should be mentioned that the statute draws no distinction between private and public employers as to these retirement provisions and, therefore, we conclude that the provisions do apply to the state and its retirement program.

The question of involuntary retirement under a benefit plan as a civil rights matter has not been

addressed by Michigan courts; it has, however, been addressed by federal courts and the courts of sister states. There are significant differences in the federal civil rights law and the Elliott-Larsen Civil Rights Act so that decisions under the federal law are helpful but not decisive. The case of *Loras College v Iowa Civil Rights Comm*, 285 NW2d 143 (Iowa, 1979), reviews language similar to the language in MCL 37.2202; MSA 3.548(202). The court considered the exception in the Iowa statute which read, in § 601A.15: "The provisions of this chapter relating to discrimination because of sex or age shall not be construed to apply to any retirement plan or benefit system of any employer unless such plan or system is a mere subterfuge adopted for the purpose of evading the provisions of this chapter."

The Iowa Supreme Court held:

"The exception protects the employer's right to require the involuntary retirement of employees on the basis of their age, but only when the employer does so pursuant to a 'retirement plan or benefit system' within the meaning of section 601A.15.

"It is important to note that, without this exception, an employer would never be permitted under the Act to retire an employee because of his age, unless such retirement is based upon the nature of the occupation. The Iowa Act (unlike its federal counterpart, 29 U.S.C. § 623 *et seq.*, which allows discrimination on the basis of age, unless the individual is between ages forty and seventy) has no limiting age category to which it applies. The Iowa Civil Rights Act applies across the board with respect to individuals of all ages." 285 NW2d 148.

Elliott-Larsen, like the Iowa statute, has no age limit and without the limitation of 70 years found in the Michigan mandatory retirement act, a state employee could never be retired for age.

It is our opinion that had the Legislature desired to terminate all involuntary retirement, as urged by the plaintiff, it would have expressed that thought precisely, as the fact of the existence of retirement plans was well known when Elliott-Larsen was enacted.

The second question raised by the plaintiff is whether the State Employees' Retirement Act unconstitutionally delegates legislative authority to the retirement board where the board is authorized to retain employees past the age of 70 for such period as the board determines to be necessary.

The term "necessary" is not defined in the act, but the retirement board has historically applied one of three conditions to any extension: completion of a special project, retention until a suitable replacement can be made or retention for a short period of time to qualify the retiree for a pension.

The plaintiff's situation did not fit any one of these criteria.

It is noted that the word "necessary" refers to the period of time that the board may extend the employment and not the services.

The criteria mandated by the Supreme Court for determining whether a given statute has provided sufficient standards to avoid the unlawful delegation of legislative authority were set forth in *Dep't of Natural Resources v Seaman,* 396 Mich 299, 309; 240 NW2d 206 (1976), here quoted from *People v Turmon,* 417 Mich 638, 644-645; 340 NW2d 620 (1983):

" 'While no hard and fast rule exists for determining whether a given statute has provided sufficient standards, a number of guiding principles have evolved in Michigan jurisprudence to assist in making a determination in this case.

" 'First, the act in question must be read as a whole; the provision in question should not be isolated but must be construed with reference to the entire act. *Argo Oil Corp v Atwood,* 274 Mich 47, 53; 264 NW 285 (1935).

" 'Second, the standard should be "as reasonably precise as the subject matter requires or permits". *Osius v St Clair Shores,* 344 Mich 693, 698; 75 NW2d 25; 58 ALR2d 1079 (1956).[7]

" 'The preciseness of the standard will vary with the complexity and/or the degree to which subject regulated will require constantly changing regulation. * * *

" 'Third, if possible the statute must be construed in such a way as to "render it valid, not invalid", as conferring "administrative, not legislative" power and as vesting "discretionary, not arbitrary, authority". *Argo Oil Corp v Atwood, supra,* 53.'

"Footnote 7 amplifies the second principle:

" 'A standard cannot be considered "as reasonably precise as the subject matter requires or permits" if it does not satisfy due process requirements. See decision in *State Highway Comm v Vanderkloot,* 392 Mich 159, 169-178; 220 NW2d 416 (1974)'."

The retirement board did not act arbitrarily and decided plaintiff's petition in accordance with long-standing and well-known rules.

In the context of this case, "necessary" was a sufficiently precise standard. *State Highway Comm v Vanderkloot, supra,* p 178.

The grant of summary judgment is affirmed.