*In re* BELL'S ESTATE.

1. ADOPTION—REVOCATION—STATUTES.

Except that there may be a rehearing within the statutory 90 days after the order of adoption may be made, there is no provision in the law of Michigan for revocation of adoption proceedings (3 Comp. Laws 1929, § 15519).

2. SAME—READOPTION BY NATURAL PARENTS.

While the probate court has no legal power to vacate or annul an order of adoption made pursuant to statute, if the natural parents desire to readopt the child and the foster parents are willing and the court finds the natural parents proper people to have the care, custody and education of the child and would give it a suitable home, an order of adoption to the natural parents could be made pursuant to statute (3 Comp. Laws 1929, § 15951 *et seq.*).

3. SAME—STATUTES—SUBSTANTIAL COMPLIANCE.

   A substantial compliance with the statutes relating to adoption should be held to be sufficient to effect an adoption (3 Comp. Laws 1929, § 15951 *et seq.*).

4. SAME—CHILDREN NOT ADOPTED ON APPROVAL.

   Persons who adopt through regular proceedings do not do so on approval.

5. SAME—READOPTION BY NATURAL PARENT—STATUTES—SUBSTANTIAL COMPLIANCE.

   Where foster parents of girl they had adopted when about 11 years of age met her natural mother, the child's surviving parent, at probate court and discussed the matter of revoking the adoption upwards of two years later with her and the probate judge but no order of any kind was entered and the child's consent does not appear to have been obtained first, there was no substantial compliance with the statute effecting a readoption by the natural mother, hence the child was the heir at law of the foster father (3 Comp. Laws 1929, § 15951 *et seq.*).

Appeal from Saginaw; O'Neill (James E.), J. Submitted October 3, 1944. (Docket No. 32, Calendar No. 42,819.) Decided January 2, 1945.

In the matter of the estate of Martin H. Bell, deceased. Gladys LaDuke Bell Wasalaski as an adopted daughter petitioned the court for an accounting by the administrator of estate, that she be declared sole heir, and for her appointment as administrator. Petition by administrator to have adoption cancelled for fraud. Order granting Gladys LaDuke Bell Wasalaski relief prayed for. Administrator appeals to circuit court. Judgment affirmed. Administrator appeals. Affirmed.

*Rolland N. Montgomery,* for petitioner.

*Ryan, Doozan & Scorsone,* for administrator.

BUTZEL, J. In July, 1929, Martin H. Bell and Mary E. Bell, his wife, who lived on a farm in Sag-

inaw county, Michigan, adopted Gladys LaDuke, a minor child then about 11 years of age, through regular proceedings in the probate court of Saginaw county. Gladys' father had died and when Gladys was 9 years of age her mother remarried and changed her name to Jones. Gladys continued to live with her mother for a while, then with her grandfather, and then she went to live with Mr. and Mrs. Bell for a year before they adopted her. Gladys was very fond of Mr. Bell, her great uncle, but had difficulty with Mrs. Bell who was not very well and who was very harsh and exacting with her. Gladys was not too well herself. She, however, went to school and did all of the housework.

In November, 1931, Mr. and Mrs. Bell accompanied by Gladys drove to Saginaw and met Mrs. Jones, Gladys' natural mother, at the probate court. Obviously they discussed what they considered a revocation of the adoption proceedings of July, 1929. The meeting evidently was very informal. A release was prepared by making appropriate insertions and deletions on a form used to take a release by an unmarried mother of a child she was releasing for adoption. It was sworn to before the deputy register of probate who had been instructed by the probate judge to take a release from Mr. and Mrs. Bell. It was signed by neither the child nor her mother. According to the testimony of the child, they went to the judge's private office for a few minutes and then to the office of the court. No order was entered by the court and as far as the record shows there was no memorandum or instructions entered on the release. No day book or journal entry is shown. There was no report by a county agent nor does it appear that Gladys' consent was first obtained.

Gladys had taken the name of Bell after she had

been adopted but after the attempted "revocation" resumed the name of LaDuke when she returned to Coleman, Michigan, where she had formerly lived. She testified that she did this because she had always been known by the name of LaDuke when she formerly lived in that locality. She also claims that she kept up her friendship with Mr. Bell, and that he was very fond of her. After the so-called "revocation," Gladys lived with her stepfather's family for about two months, then with her mother for a like period, and then she went to work in Saginaw. She kept her wages. When she was 20 years of age she married a Mr. Wasalaski.

Mrs. Bell died and subsequently on December 18, 1941, Mr. Bell died intestate and leaving an estate. He left no children unless Gladys is still a daughter by adoption. Fourteen other heirs survive him. Gladys claimed to be the sole heir at law. The principal question in the case is whether the so-called revocation and the proceedings in the probate court were effective so as to revoke the former regular adoption proceedings.

Except that there may be a rehearing within the statutory 90 days* after the order of adoption may be made (*In re White,* 300 Mich. 378 [138 A. L. R. 1034]), there is no provision in the law of this State for revocation of adoption proceedings. Justice Grant Fellows in 1913, while Attorney General of the State of Michigan, rendered the following opinion:

"In my opinion the probate court would have no legal authority to vacate or annul any order of adoption of a minor child made in pursuance of 2 Comp. Laws 1897, § 8780, but if the natural parents of said child desire to readopt the child and its foster par-

---

* See 3 Comp. Laws 1929, § 15519 (Stat. Ann. § 27.2619).—Reporter.

ents are willing that this should be done, and the court should find that the natural parents are proper people to have the care, custody and education of said child, and that they were in a position to and would give the child a suitable home, he would have authority to enter an order of adoption to the natural parents upon proper application being made and proceedings taken according to law.''

This question is not briefed and, therefore, we base the present opinion on the ground that there is insufficient proof of a legal revocation, if such were possible. In *Fisher* v. *Gardnier,* 183 Mich. 660, we took judicial notice that papers for use in the probate court of this State are prepared by those not particularly learned in the law and the legal niceties that characterize the preparation of such papers. A substantial compliance with the statutory requirements should be held sufficient. In the present case, we have not even a substantial compliance. It is true that a former probate judge gave some testimony in regard to the interview in the probate court, in which a revocation was discussed. It occurred 12 years prior to the hearing in the present case. His testimony is far from satisfactory and does not show that an order was ever made. The court was dealing with a child of tender years at the time of the interview in the probate court. Her rights are paramount. She cannot be divested by irregular and inchoate proceedings unauthorized by statute. Persons who adopt through regular proceedings do not do so on approval. The probate court held that Gladys as the adopted child of Martin H. Bell was his sole heir; the circuit judge so held, and we affirm the order of the circuit judge. For the reasons herein stated we also decline to enter an order *nunc pro tunc* revoking the adoption proceedings.

The judgment of the circuit court, affirming the

order of the probate court, is herewith affirmed, with costs to appellee.

STARR, C. J., and NORTH, WIEST, BUSHNELL, SHARPE, BOYLES and REID, JJ., concurred.