*In re* GARLOW'S ESTATE.
GARLOW *v.* SQUIRES.

1. INSURANCE—RESTRICTED CLASS OF BENEFICIARIES—NOMINATION OF CREDITOR.

   Nomination of creditor of person, insured by the British government, as beneficiary under policy limiting beneficiaries to members of insured's family, was not valid, but where proceeds became a part of insured's estate, creditor was entitled to payment therefrom.

2. ADOPTION—NUNC PRO TUNC ENTRY OF ORDER APPROVING ADOPTION—DEATH—STATUTES.

   Order of probate court approving adoption *nunc pro tunc* as of a date some 35 years previously, entered several years after death of the person attempted to be adopted and of the adopting father and after a guardian had been appointed for the adopting mother, was properly set aside on appeal to the cir-

cuit court, where there had never actually been any approval of the adoption agreement by the court prior to the death of the child as required by statute (3 Comp. Laws 1915, §§ 14138, 14142).

3. SAME—ESTATE OF ADOPTED CHILD—COURT PROCEEDINGS—DEATH.
   On petition by guardian of estate of alleged adopting parent to recover portion of estate of alleged adopted child, record *held*, to show there were no adoption proceedings in any court prior to death of child.

4. SAME—LACHES—ESTOPPEL—DEATH OF ADOPTED CHILD.
   Guardian of alleged adopting mother had no standing in court in chancery proceeding to recover a share of the estate of the alleged adopted child where proceeding was based upon an adoption which never took place, where adopting mother had participated in proceedings in another jurisdiction so as to prove there never had been any adoption and that the natural mother was the heir and had accepted a share of the proceeds of litigation in that State involving estate of the child then deceased.

5. SAME—STATUTES.
   Adoption proceedings are purely statutory and when the statutory proceedings regulating adoption of children have not been or can not be complied with the adoption will fail.

6. SAME—COMMON LAW—STATUTES.
   There was no proceeding for adoption at common law, hence if statutes are not followed there can be no legal adoption.

7. COSTS—TWO CASES PRESENTED AS ONE.
   Where two cases were presented together on appeal and are affirmed, the appellees may recover costs the same as if there were only one case.

Appeal from Kent; Verdier (Leonard D.), J. Submitted October 4, 1945. (Docket Nos. 31, 32, Calendar Nos. 43,148, 43,149.) Decided January 7, 1946.

In the matter of the estate of Leonard Lee Garlow. On petition for leave to file lost documents and for completion of adoption. Adoption ordered *nunc pro tunc*. Elizabeth Baker Squires, natural

mother, appealed to circuit court. Order set aside. Ray Watkins, guardian of Martha J. Garlow, mentally incompetent, appeals. Affirmed.

Bill by Martha J. Garlow, individually, and Ray Watkins, guardian of Martha J. Garlow, mentally incompetent, against Elizabeth Baker Squires for accounting of funds received from estate of Leonard Lee Garlow, deceased. Decree for defendant. Plaintiff appeals. Affirmed.

*Fred P. Geib,* for plaintiff.

*Homer H. Freeland,* for defendant.

BUTZEL, C. J. Leonard Lee Garlow, now deceased, was the illegitimate son of Elizabeth Baker Squires, appellee. He was born October 4, 1908, and was called Jack Baker. Shortly after his birth, he was taken to the home of Leonard Lee Garlow and Martha J. Garlow, an appellant. On or about March 1, 1909, an instrument purporting to be articles of adoption and changing the name from Jack Baker to Leonard Garlow was signed by appellee, then known as Elizabeth Baker. These articles of adoption were acknowledged by the adopting parents about a month later. They were never presented to the probate court; no hearing was had, and obviously no order of adoption was ever made. The document was kept by the adopting parents in a desk in their home for many years. Both Mr. and Mrs. Garlow at considerable expense gave Leonard the very best care and attention, the same as if he were their natural son. The natural mother, who upon marriage became Elizabeth Baker Squires, never had any further contact with her son. Leonard left the Garlow home just before he

reached his majority. One time while at the Garlow home, he asked for the adoption papers and the adoption agreement was given to him. It was evidently lost by him but a photostatic copy was found later with his effects. He was killed in a flight over the English Channel while in the employ of British Overseas Airways Corporation, an air transport auxiliary, on December 26, 1941. He left £ 2,000 provided by the British government for pilots serving in the air transport auxiliary. One thus insured was entitled to nominate a member of his family but not a stranger as beneficiary. Leonard named a Mrs. Spencer Kennelly of Los Angeles, California, as next of kin and described her as his aunt. The nomination was not valid because the nominee was not related to the deceased. He was, however, financially indebted to Mrs. Kennelly. There was some difficulty in regard to the disposition of his estate which was probated in Los Angeles, California, his former home. The question arose as to who was his heir. Mrs. Garlow, appellant, was anxious to obtain some of the insurance. Depositions were taken in Michigan and Mrs. Garlow made an affidavit stating that no adoption proceedings in court were ever had though she and her husband always believed and understood that Leonard had been adopted and was accordingly cared for by them as a member of their family; that subsequently on his becoming ill he went to Arizona for his health and then to California; that sometime later he entered the service of the British Air Transport Service and was killed while in such service on December 26, 1941. She further stated that Mrs. Squires was the mother of Leonard, that she made the affidavit for the purpose of facilitating the disposition of the estate to the persons legally entitled thereto. Mrs. Squires also made an affi-

davit stating that she was the mother of deceased and the child was illegitimate, that she never married the putative father, that the child was taken into the custody of Martha J. Garlow and her husband but never adopted by them or either of them. With these proofs, the superior court for the county of Los Angeles of the State of California properly held that Mrs. Squires, the mother, was entitled to the estate. It had been very much reduced, however, by the court allowing a large sum that was due Mrs. Kennelly. An agreement was entered into by Mrs. Squires and Mrs. Garlow which provided that Leonard's estate be settled by payment of the attorney fees and expenses and an equal division of the remainder between appellant and appellee. After the payments of fees, the public administrator of California received from the American Consul the sum of $8,226.34. After payment of $4,250 to Mrs. Kennelly as a creditor of the estate and the administrator's fees, et cetera, in California, there remained the sum of $4,190.34 for distribution. A small sum was added to this amount and the sum of $4,219.34 was sent to the Old Kent Bank of Grand Rapids for distribution. Mrs. Squires signed a receipt for this amount. She retained $1,354.31. The guardian who had been appointed for Martha Garlow, the appellant, received a like amount and the balance went to the attorneys. A day or two later notice was served on the Old Kent Bank that Martha J. Garlow claimed the entire fund, but the notice came too late as the disposition of the funds had taken place and the chancery suit referred to hereinafter was dismissed as to the bank.

The photostatic copy of the agreement to adopt, called articles of adoption, was subsequently found. Thereafter Martha J. Garlow through her guardian on or about March 21, 1944, filed a petition in the

probate court for Kent county, Michigan, for res-
toration of the lost instrument and for completion
of adoption by entering an order *nunc pro tunc* ap-
proving the agreement made in 1908 to adopt
Leonard L. Garlow who in 1944 had been dead sev-
eral years and who, if still living, would have been
over 35 years of age. The agreement to adopt had
also been signed by both Mr. and Mrs. Garlow. Mr.
Garlow died previous to 1941, so even were it possi-
ble to approve of the adoption *nunc pro tunc,* it
would have meant approval of an adoption agree-
ment 35 years after it was made by two people, one
of whom at the time of the hearing was dead, and
the other under guardianship because of her in-
ability to properly look after her finances. The
probate judge nevertheless entered such an order.
It was appealed from. Appellant also began a
chancery suit in the circuit court for the county of
Kent, in which she claimed that equitably she was
entitled to the entire residue of Leonard's estate
and that Mrs. Squires should be compelled to pay
back such part of the entire sum as she had re-
ceived less what she had paid appellant. She
claimed also that Mrs. Squires had been unjustly
enriched and should pay appellant what appellee
was not entitled to. The appeal from the probate
court was heard first and the order of the probate
court properly set aside and subsequently the bill
of complaint in the chancery case was dismissed.

We need not dwell upon a question that has been
so frequently before this court in which we have
adhered to the law that adoption proceedings are
purely statutory. There can be no question, after
reading the record, that it positively shows there
never was any court proceeding in Michigan until
an effort was made in the probate court to restore
the agreement to adopt as a lost instrument and to
obtain an order *nunc pro tunc* approving the adop-

tion. Appellant's own affidavit in the California court proceedings, as well as her testimony on the appeal in the law case, establishes beyond any question the fact that there never were any previous court proceedings for adoption. Mrs. Garlow stated that she was familiar with adoption proceedings, that she had kept the adoption papers in her desk in her home where they remained for a great many years. There was no record of any kind in the probate court showing such adoption. The law at the time required that all persons signing the agreement to adopt should acknowledge it and such agreement should be presented to and be filed with the judge of probate; that the judge should thereupon make an investigation and, if he should be satisfied, make an order to be entered in the probate court, et cetera. 3 Comp. Laws 1915, §§ 14138, 14142.* The Garlows did not do this. At the time the agreement to adopt was entered into, the adopting parents would not have been heirs of an adopted child had he died and left an estate. It was not until 1923 that the adopting parents would have had any interest whatsoever in the estate of the adopted child. *In re Dempster's Estate*, 247 Mich. 459.

Mrs. Garlow had no standing in a court of equity as she was principally relying upon an adoption that never took place. Except in signing the agreement to adopt, she refrained from taking any steps to legally adopt Leonard. She kept the paper in her desk and she might have destroyed it had she seen fit. She further took part in the California superior court proceeding so as to prove that there

---

* 3 Comp. Laws 1915, § 14142, was amended by Act No. 70, Pub. Acts 1923. These sections became 3 Comp. Laws 1929, §§ 15951, 15955 (Stat. Ann. §§ 27.3150, 27.3154). Such sections were repealed by the probate code and re-enacted by it, see Act No. 288, chap. 10, §§ 1, 5, Pub. Acts 1939 (Comp. Laws Supp. 1940, §§ 16289–10[1], 16289–10[5], Stat. Ann. 1943 Rev. §§ 27.3178[541], 27.3178[545]).— REPORTER.

never had been any adoption and that Mrs. Squires was the mother and natural heir. She further accepted her share of the proceeds when the case was settled. We need not go into the question whether it became *res judicata* when the California court decided that Mrs. Squires was the sole heir. While there may be a small amount of what has been termed "lay equity" in the case, we are governed by the law of adoption. The question has frequently come before this court and we have firmly adhered to the rule that in order to have a legal adoption or claim any rights thereunder the statutes of Michigan must be observed. This was not done in this case. Adoption proceedings are purely statutory. *In re White,* 300 Mich. 378 (138 A. L. R. 1034). When the statutory provisions regulating adoption of children can not be complied with, the adoption will fail. *Albring* v. *Ward,* 137 Mich. 352; *Slattery* v. *Hartford-Connecticut Trust Co.,* 254 Mich. 671; *In re Bell's Estate,* 310 Mich. 394. In this latter case we declined to enter an order *nunc pro tunc* revoking the adoption proceedings where there had been no proper proceedings in court to revoke them. The converse holds true and no order *nunc pro tunc* may be made where there have been no previous proceedings in court. Where the failure to follow the statute in regard to adoptions may occasionally cause a hardship, it must be borne in mind that there was no such proceeding at common law and that if the statutes are ignored, there can be no legal adoption.

We believe it unnecessary to discuss other details. In coming to our conclusion we have also read the letters printed in the separate record but they do not affect the result in any way. The court correctly decided the appeal from the probate court and properly dismissed the bill of complaint in the chancery court. Many questions are raised by ap-

pellant, but we believe our discussion of the case is sufficient to answer all of them.

The judgment and decree of the lower court are affirmed. Inasmuch as the cases are presented together, appellees will recover costs the same as if there were only one case.

CARR, BUSHNELL, SHARPE, BOYLES, REID, NORTH, and STARR, JJ., concurred.